1  Mildred K. O'Linn, Esq. (State Bar No. 159055)
2  Tony M. Sain, Esq. (State Bar No. 251626)
   MANNING & KASS
3  ELLROD, RAMIREZ, TRESTER LLP
   801 South Figueroa Street
4  15th Floor at 801 Tower
   Los Angeles, CA 90017
5  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
6  mko@manningllp.com; tms@manningllp.com

7  Attorneys for Defendants,
   CITY OF COLTON, SGT. ROBBIE
8  BORNSHEUR, OFFICER WADE HARRIS,
   AND OFFICER SAUL SALAZAR

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13

14  ESTATE OF HUTALIO SERRANO-          **Case No.:** 5:13CV-00519-JAK (JEMx)
    GRANADOS, by and through its personal  [*Assigned to Hon. District Judge John Kronstadt*
15  representative GABRIELA SERRANO;    *and Hon. Magistrate Judge John E. McDermott*]
    GABRIELA SERRANO (for herself);
16  B.S., G.L.S., and G.S., minor children of
    Plaintiffs' Decedent, by and through their  **STATEMENT OF**
17  Guardian ad Litem GABRIELA          **UNCONTRAVERTED FACTS AND**
    SERRANO,                            **CONCLUSIONS OF LAW**

18                                      [*Filed concurrently with Officer*
19                      Plaintiffs,     *Defendants' Motion for Summary*
                                        *Judgment and supporting papers*]
              vs.
20
    CITY OF COLTON, a public entity;
21  DOES 1 through 10, individually and in
    their official capacity as police officers for
22  the CITY OF COLTON,

23                      Defendants.     Complaint Filed:   May 21, 2013
                                        Pre-Trial Conf.:   October 27, 2014
24                                      Trial Date:        November 11, 2014

25

26

27  **TO PLAINTIFFS, ALL PARTIES, AND THEIR ATTORNEYS HEREIN:**

28

    SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.
    - I -

1    PLEASE TAKE NOTICE that – pursuant to applicable federal laws including
2    but not limited to Federal Rules of Civil Procedure 7, 11, 16, and 56, as well as U.S.
3    Dist. Ct., C.D. Cal. L.R. 56-1 through 56-4, and all applicable Orders of the Court
4    [*e.g.*, Dkt. Doc. 99, 127, 131] – defendants SGT. ROBBIE BORNSHEUR, OFFICER
5    WADE HARRIS, and OFFICER SAUL SALAZAR (collectively herein after as
6    "Defendants" or "Officer Defendants") hereby submit this separate Statement of
7    Uncontraverted Facts and Conclusions of Law ("UF") in support of the Officer
8    Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary
9    Judgment (filed concurrently herewith).
10   ///
11   ///
12   ///

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

**OBJECTION TO EVIDENCE: PLAINTIFFS' EXPERT'S OPINIONS.**

The Officer Defendants cite herein to the opinions of plaintiffs' expert only to show that such opinions – even if they were admissible (which they are *not*) – cannot establish asphyxia as the cause of death for Hutalio Serrano in this case.  However, **defendants maintain that the opinions of Dr. Ronald O'Halloran are <u>inadmissible in this case</u>** in any/all proceedings (including consideration of the instant motion) under *Daubert* and other bases.  The Officer Defendants JOIN and incorporate by reference here the Defendant [City]'s Motion [*In Limine* No. 2] to Exclude Evidence Regarding the Opinions-Testimony of Dr. Ronald O'Halloran [Dkt. Doc. 105, 106, 107, 122].  Nothing in the Officer Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("MSJ") – or any supporting papers including this one – shall be construed as any waiver by defendants of any objections to the admissibility of Dr. O'Halloran's opinions in this case.

Dated: September 8, 2014                  **MANNING & KASS**
                                          **ELLROD, RAMIREZ, TRESTER LLP**

                                          By:  _/s/ Tony M. Sain_____
                                               Mildred K. O'Linn, Esq.
                                               Tony M. Sain, Esq.
                                          Attorneys for Defendants,
                                          CITY OF COLTON, SGT. ROBBIE
                                          BORNSHEUR, OFFICER WADE HARRIS,
                                          AND OFFICER SAUL SALAZAR

## STATEMENT OF UNCONTRAVERTED FACTS

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 1. After an injury-related 2006 conviction for driving under the influence, while jailed in a County of San Bernardino facility on a 120-day sentence, Serrano was beaten by three other inmates so as to require hospital treatment for bloody head trauma. | 1. Garcez Decl., ¶¶ 2-7, Exs. 1, 2 (Appx.-Sain Decl., Ex. A). |
| 2. Later, as a result of the financial stress of being unemployed for some time leading up to the 2012 incident, Serrano – the sole breadwinner in his household – began to have repeated arguments with his wife, Gabriela Serrano ("Gabriela"), as they struggled to pay their bills and mortgage. | 2. Ed. Hernandez Dep., 29:17-34:6, 34:21-35:6, 35:19-22, 36:12-38:21 (Appx.-Sain Decl., Ex. B). |
| 3. On some occasions when Serrano and Gabriela would have these fights, in order to let Serrano "cool down," Serrano would take her three children with Serrano (B.S., G.S., and G.L.S.) away from their four-bedroom house to sleep at her parents' two-bedroom condo a few miles away in Colton: there, she and the kids would sleep in the living room, since there were already four other peoeple sleeping in the two bedrooms – | 3. Ed. Hernandez Dep., 29:17-34:6, 34:21-35:6, 35:19-22, 36:12-38:21, 43:13-44:19, 45:17-46:2 (Appx.-Sain Decl., Ex. B); G. Serrano Dep., 83:13-22, 86:5-11, 87:4-90:9, 141:13-143:5 (Appx.-Sain Decl., Ex. C). |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| her father Efrain Hernandez Acosta ("Efrain Sr."), her mother Teresa Hernandez ("Teresa"), her brother Efrain Hernandez ("Efrain Jr."), and her son by another man Eduardo Hernandez ("Eduardo"). | |
| 4.  Sometime between January 12-14, 2012, after another fight with Serrano, Gabriela again brought the three Serrano kids over to her parents' condo to sleep overnight. | 4.  G. Serrano Dep., 83:13-22, 86:5-11, 87:4-90:9, 141:13-143:5 (Appx.-Sain Decl., Ex. C). |
| 5.  On the evening of January 14, 2012, when Serrano came over to the condo, Gabriela's eldest daughter B.S. called the Colton Police Department to have Serrano taken away from the condo because Serrano was "bothering" them and refused to leave: on that occasion, Serrano was identified to police as a family member. | 5.  Suppl. Heusterberg Decl., ¶¶ 2-5, Exs. 1, 2 (Appx.-Sain Decl., Ex. D); Jaeger Decl., ¶¶ 2-13, Exs. 1, 2 (Appx.-Sain Decl., Ex. E); *see* G. Serrano Dep., 45:16-46:11, 66:17-24, 93:12-16 (Appx.-Sain Decl., Ex. C). |
| 6.  When non-party Colton Police Officers Jaeger and Gruenzner arrived, Serrano was cooperative, and one of those officers drove Serrano back to his house without complications. | 6.  Suppl. Heusterberg Decl., ¶¶ 2-5, Exs. 1, 2 (Appx.-Sain Decl., Ex. D); Jaeger Decl., ¶¶ 2-13, Exs. 1, 2 (Appx.-Sain Decl., Ex. E); *see* G. Serrano Dep., 60:11-20, 97:15-19 (Appx.-Sain Decl., Ex. C). |
| 7.  On January 15, 2012, circa 5:00 p.m., Serrano again came to the Hernandez | 7.  G. Serrano Dep., 143:6-24 (Appx.-Sain Decl., Ex. C). |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| condo and asked Gabriela when she would come home. | |
| 8. However, instead of going home with her husband, Gabriela decided to continue staying at her parents' condo with the kids. | 8. G. Serrano Dep., 143:6-24 (Appx.-Sain Decl., Ex. C). |
| 9. When Serrano remained outside the condo, Gabriela asked Eduardo to call the Police Department on Serrano. | 9. G. Serrano Dep., 77:20-78:4, 93:12-95:3, 163:8-165:20 (Appx.-Sain Decl., Ex. C). |
| 10. During that 9-1-1 call, at about 5:11 p.m., Eduardo described Serrano's appearance, but he did not identify Serrano by name or as family: rather, Eduardo suggested that Serrano was a stranger who was "kinda acting weird," walking in and out of traffic, and might "do something bad" unless the police came to escort Serrano away. | 10. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:11:46-5:13:00[1]; Ed. Hernandez Dep., 85:23-86:24 (Appx.-Sain Decl., Ex. B); *see also* Suppl. Heusterberg Decl., ¶ 11 (Appx.-Sain Decl., Ex. D); 911-Dispatch audio recordings (Appx.-Sain Decl., Ex. G). |
| 11. The dispatcher then transmitted the 9-1-1 call facts as a "suspicious person" call. | 11. Salazar Dep., 25:15-23 (Appx.-Sain Decl., Ex. H); Harris Dep., 38:5-39:10 (Appx.-Sain Decl., Ex. I); *see also* Bornsheur Dep., 32:25-33:19 (Appx.-Sain Decl., Ex. M). |
| 12. About 14 minutes later, Officer Saul | 12. Composite 911-Dispatch-TASER |

[1] For the Composite 911-Dispatch-TASER recordings, the times displayed herein are the clock times displayed on the screen, not the audio recording run-times. For comparison, display clock time 5:11:46 corresponds to the recording run time of 0:00 (the beginning of the recording).

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| Salazar arrived outside the Hernandez condo in a marked patrol car and his Colton Police Department uniform. | recordings (Appx.-Sain Decl., Ex. F) at 5:25:48-5:25:54; Ed. Hernandez Dep., 97:7-98:9 (Appx.-Sain Decl., Ex. B); Ef. Hernandez Jr. Dep., 53:9-54:14 (Appx.-Sain Decl., Ex. J). |
| 13. Officer Salazar first encountered Serrano in a parking lot across from the Hernandez condo. | 13. Salazar Dep., 48:9-18 (Appx.-Sain Decl., Ex. H); *see also* Scene Photographs (Appx.-Sain Decl., Ex. K); Ed. Hernandez Dep., 85:11-24, 96:9-97:10 (Appx.-Sain Decl., Ex. B); Ef. Hernandez Jr. Dep., 76:7-77:19 (Appx.-Sain Decl., Ex. J). |
| 14. After initially ignoring the officer's instructions, Serrano approached Officer Salazar, but then Serrano failed to comply with the officer's requests for Serrano's name or identification. | 14. Salazar Dep., 44:1-45:3, 45:21-46:1, 47:1-7, 50:5-52:20, 59:4-60:8, 109:10-23 (Appx.-Sain Decl., Ex. H); *see also* Ed. Hernandez Dep., 97:1-6 (Appx.-Sain Decl., Ex. B). |
| 15. Serrano was also moving about left and right, as though he was going to walk away, and kept moving his hands toward the front and back of his waistband area: this prompted Officer Salazar to become concerned for his safety and to order Serrano to stop moving. | 15. Salazar Dep., 52:21-53:17, 59:4-60:8 (Appx.-Sain Decl., Ex. H). |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 16. When Serrano explained that he was there to see his wife, Officer Salazar saw that Serrano was sweating profusely, despite the air temperature being around 55°, and he was smacking his lips as though his mouth was dry: this caused him to suspect that Serrano was under the influence of a narcotic like methamphetamine, which increased his officer safety concerns. | 16. Salazar Dep., 50:5-52:20, 61:24-63:7, 67:7-68:14, 98:8-23, 105:10-107:14 (Appx.-Sain Decl., Ex. H); Holt Dep., 51:22-52:21 (Appx.-Sain Decl., Ex. L). |
| 17. Officer Salazar then ordered Serrano to sit on the ground. | 17. Salazar Dep., 91:8-92:1, 94:15-20 (Appx.-Sain Decl., Ex. H). |
| 18. However, Serrano quickly and repeatedly advanced on the officer so as to cause the officer to believe that Serrano was going to assault him. | 18. Salazar Dep., 86:17-87:3, 87:10-13, 88:1-25, 89:17-90:6, 103:24-104:14, 105:10-107:14, 107:21-108:3 (Appx.-Sain Decl., Ex. H), |
| 19. Serrano then kneeled on the ground, instead of sitting, despite additional Spanish commands to get all the way down on the ground. | 19. Salazar Dep., 108:2-5 Appx.-Sain Decl., Ex. H |
| 20. Within 2 minutes of his arrival, Officer Salazar requested back-up be sent to the scene. | 20. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:27:59-5:28:20; Salazar Dep., 67:7-68:14, 115:17-23 (Appx.-Sain Decl., Ex. H). |
| 21. While kneeling, Serrano repeatedly reached his hands inside his clothing at | 21. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| the waistband, pants ankle, pocket, and neck: this prompted Officer Salazar to fear that Serrano was reaching for a weapon – despite Spanish commands to show his hands. | F) at 5:32:20-5:33:13; Salazar Dep., 69:6-70:8, 75:4-20, 81:9-82:14, 83:4-84:25, 97:3-9, 100:24-101:10, 108:2-5 (Appx.-Sain Decl., Ex. H). |
| 22. In response, **Officer Salazar struck Serrano's left arm with a flashlight** twice as Serrano was reaching into his left pocket. | 22. Salazar Dep., 84:8-25, 90:20-24, 94:24-95:2, 97:15-17, 119:2-120:13 (Appx.-Sain Decl., Ex. H). |
| 23. Notably, other than bruises and scrapes from resistance to grappling-handcuffing, Serrano did not suffer any injury to his arms. | 23. Holt Dep., 67:11-69:13 (Appx.-Sain Decl., Ex. L). |
| 24. About 9 minutes after Officer Salazar arrived at the scene, at about 5:34 p.m., Officer Wade Harris also arrived at the scene. | 24. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:33:23-5:33:37, 5:34:23-5:34:42; *see also* Salazar Dep., 43:11-16 (Appx.-Sain Decl., Ex. H); Harris Dep., 43:7-12, 46:3-24 (Appx.-Sain Decl., Ex. I). |
| 25. Officer Harris saw that Officer Salazar was holding a TASER device and that a kneeling Serrano was agitated, sweating profusely, and moving as though he was preparing to stand up: Officer Harris then suspected that Serrano was under the influence of narcotics. | 25. Harris Dep., 44:20-45:4, 50:16-51:25, 60:20-61:17, 62:16-63:17, 134:17-135:1 (Appx.-Sain Decl., Ex. I); *see also* Salazar Dep., 118:3-14 (Appx.-Sain Decl., Ex. H). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 26. Officer Harris advised Officer Salazar that he planned to push Serrano "straight toward" Officer Salazar – by which he meant to push Serrano down into a prone position on the ground. | 26. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:34:46-5:34:50; Salazar Dep., 121:14-122:16 (Appx.-Sain Decl., Ex. H); Harris Dep., 56:18-57:12, 57:18-58:11 (Appx.-Sain Decl., Ex. I). |
| 27. When Officer Harris pushed Serrano forward, Serrano immediately pushed himself back into an upright kneeling position. | 27. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:34:50-5:35:10; Salazar Dep., 122:20-123:3, 123:7-124:5, 129:4-130:6 (Appx.-Sain Decl., Ex. H); Harris Dep., 76:25-77:25, 78:5-19, 79:4-6, 80:25-81:25 (Appx.-Sain Decl., Ex. I). |
| 28. Officer Harris warned Serrano that Serrano would be "tased" and ordered Serrano to "lay down": when Serrano failed to comply, Officer Harris radioed that Serrano was being uncooperative. | 28. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:34:50-5:35:10; Harris Dep., 74:15-75:14, 76:25-77:25, 80:4-11 (Appx.-Sain Decl., Ex. I). |
| 29. Serrano continued to ignore repeated officer commands to get down on the ground, and he remained upright. | 29. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:34:50-5:35:10; Salazar Dep., 124:12-16, 125:25-126:12, 129:4-130:6, 131:10-23, 134:6-22 (Appx.-Sain Decl., Ex. H); Harris Dep., 74:15-75:14, 76:25-77:25, |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

- 7 -

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| | 80:4-11, 88:4-19, 89:15-90:11 (Appx.-Sain Decl., Ex. I). |
| 30. Hearing the reports of an uncooperative subject, Sgt. Robbie Bornsheur also began to drive to the scene. | 30. Bornsheur Dep., 30:4-32:13, 35:18-37:4 (Appx.-Sain Decl., Ex. M). |
| 31. As documented on TASER videos, Officer Salazar then approached to try to handcuff Serrano, holstering his TASER. | 31. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:10-5:35:14; Salazar Dep., 144:15-145:6, 152:1-153:10 (Appx.-Sain Decl., Ex. H); Harris Dep., 77:4-25, 84:1-24 (Appx.-Sain Decl., Ex. I); *see also* Harris TASER video & Salazar TASER video (Appx.-Sain Decl., Ex. N). |
| 32. As Officer Salazar took hold of Serrano's left arm, Serrano apparently said the Spanish word for death ("muerte"), and grabbed and pulled Officer Salazar's left arm downward, pulling the officer downward. | 32. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:14-5:35:18; Salazar Dep., 144:15-145:6, 152:1-153:10, 184:10-185:3, 216:8-23 (Appx.-Sain Decl., Ex. H); Harris Dep., 77:4-25, 84:1-24, 92:8-17, 95:14-97:10 (Appx.-Sain Decl., Ex. I). |
| 33. In response, at about 5:35:17 p.m., Officer Harris deployed his TASER in dart/probe mode at Serrano, apparently striking Serrano on the right side of his rib cage/back, for a 5 second discharge. | 33. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:19-5:35:29; Salazar Dep., 161:4-23, 163:24-164:2, 184:10-185:3 (Appx.-Sain Decl., |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
|  | Ex. H); Harris Dep., 97:15-21 (Appx.-Sain Decl., Ex. I); *see* Holt Dep., 65:12-67:11, 69:14-72:21 (Appx.-Sain Decl., Ex. L). |
| 34. A TASER in dart mode is designed to deliver electricity into a subject's skeletal muscles in a way that should prevent a subject from making voluntary movements through neuromuscular incapacitation. | 34. Dawes Decl., Report pp. 4-11 (Appx.-Sain Decl., Ex. O); *cf.* Harris Dep., 97:22-98:4 (Appx.-Sain Decl., Ex. I); *see* Holt Dep., 25:19-26:23 (Appx.-Sain Decl., Ex. L). |
| 35. However, during this TASER discharge, Serrano began to log-roll, as though to break the circuit – despite officer commands to stop. | 35. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:19-5:35:29; Salazar Dep., 161:4-23, 164:3-8, 185:22-25, 186:10-20 (Appx.-Sain Decl., Ex. H); Harris Dep., 97:22-99:20, 103:2-19 (Appx.-Sain Decl., Ex. I). |
| 36. After this discharge, Serrano began to swat at the TASER wires, so Officer Harris discharged his TASER a second time, for about 2 seconds. | 36. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:19-5:35:29; Salazar Dep., 161:4-23, 165:25-168:7, 182:23-183:7, 186:10-20 (Appx.-Sain Decl., Ex. H); Harris Dep., 97:22-99:20, 100:1-8, 101:5-102:3, 103:2-19, 104:1-16 (Appx.-Sain Decl., Ex. I). |
| 37. However, Serrano returned to his knees | 37. Composite 911-Dispatch-TASER |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| and moved as though to stand, prompting Officer Harris to radio that Serrano was "still uncooperative." | recordings (Appx.-Sain Decl., Ex. F) at 5:35:19-5:35:29, 5:35:33-5:35:39; Salazar Dep., 169:24-170:7, 173:6-25, 186:10-20 (Appx.-Sain Decl., Ex.H); Harris Dep., 104:1-16 (Appx.-Sain Decl., Ex. I); *see* 911-Dispatch audio recordings (Appx.-Sain Decl., Ex. G). |
| 38. As Serrano continued to move his arms and body instead of laying on the ground, Officer Salazar then deployed his TASER in dart mode at Serrano for a 5 second discharge, apparently to Serrano's mid-to-lower back. | 38. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:33-5:35:45; Salazar Dep., 165:25-168:7, 188:3-21, 189:20-23, 192:22-193:6 (Appx.-Sain Decl., Ex. H); Harris Dep., 104:1-16 (Appx.-Sain Decl., Ex. I); *see* Holt Dep., 65:12-67:11, 69:14-72:21 (Appx.-Sain Decl., Ex. L). |
| 39. However, Serrano still failed to lay down or put his hands behind his back – despite repeated officer commands to do so, and moved as though to flee. | 39. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:33-5:35:51; Salazar Dep., 230:24-233:10 (Appx.-Sain Decl., Ex. H). |
| 40. In response, Officer Salazar discharged his TASER a second time for 5 seconds, as Serrano appeared to swing his arms – despite additional Spanish commands to | 40. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:33-5:35:51; Salazar Dep., 200:18-201:2, 235:13-236:25 |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| put his hands behind his back. | (Appx.-Sain Decl., Ex. H). |
| 41. As Serrano continued to move his arms, despite officer commands to lay down and put his hands behind his back, Officer Salazar discharged his TASER a third time for 5 seconds. | 41. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:33-5:35:51; Salazar Dep., 201:8-13, 204:22-205:16, 235:13-237:6 (Appx.-Sain Decl., Ex. H); Harris Dep., 104:1-105:1 (Appx.-Sain Decl., Ex. I); *see also* Ed. Hernandez Dep., 118:7-14, 125:8-11 (Appx.-Sain Decl., Ex. B). |
| 42. However, Serrano resumed rolling, sat up, and tried to flee again, despite additional commands to get down and put his hands behind his back. | 42. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:51-5:36:04; Salazar Dep., 201:8-13, 204:22-205:16, 206:20-25, 235:13-237:6, 260:7-261:1 (Appx.-Sain Decl., Ex. H); *see also* Ed. Hernandez Dep., 130:25-131:21 (Appx.-Sain Decl., Ex. B). |
| 43. In response, both officers discharged their TASERs for 5 seconds. | 43. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:51-5:36:04; Salazar Dep., 201:8-13, 204:22-205:16 (Appx.-Sain Decl., Ex. H); Harris Dep., 100-1-8, 109:23-110:20 (Appx.-Sain Decl., Ex. I). |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.
- 11 -

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 44. After these TASER discharges, at about 5:36:02, there was no further TASERing: there were a total of **7 TASER discharges**; thereafter, Sgt. Bornsheur arrived at the scene. | 44. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:35:34-5:36:04; Salazar Dep., 198:15-199:2 (Appx.-Sain Decl., Ex. H); Harris Dep., 108:12-22, 109:23-110:20, 111:2-23 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 38:14-21, 49:15-51:2 (Appx.-Sain Decl., Ex. M). |
| 45. After the last TASER discharge, as shown on the TASER videos, Serrano's actions and loud statements continued to be documented for another 30-49 seconds. | 45. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:36:02-5:36:51; Bornsheur Dep., 38:14-21, 49:15-51:2 (Appx.-Sain Decl., Ex. M); *see also* Harris TASER video & Salazar TASER video (Appx.-Sain Decl., Ex. N). |
| 46. After the last TASER discharge, Serrano was seated with his butt on the ground and his legs in front of him, screaming at the officers, waving his arms, and pulling at the TASER wires attached to him, despite officer commands to lay down on his stomach. | 46. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:36:02-5:36:51; Salazar Dep., 208:7-15, 209:2-21, 237:8-23 (Appx.-Sain Decl., Ex. H); Harris Dep., 112:17-25, 135:20-136:8 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 38:14-21, 49:15-51:2, 58:16-59:16, 63:7-66:1, 68:21-74:16 (Appx.-Sain Decl., Ex. M). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 47. The officers took Serrano's arm by the shoulder and tried to roll Serrano onto his belly; however, Serrano physically resisted this move. | 47. Salazar Dep., 211:15-212:7, 214:4-11 (Appx.-Sain Decl., Ex. H); Harris Dep., 111:2-112:6 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 38:14-21, 49:15-51:2, 63:7-66:1 (Appx.-Sain Decl., Ex. M). |
| 48. Sgt. Bornsheur and Officer Salazar then tried to pull Serrano's right arm behind his back, from a position to the right of Serrano, while Officer Harris tried to pull Serrano's left arm behind his back from a position to the left of Serrano. | 48. Salazar Dep., 214:4-11, 240:2-242:5 (Appx.-Sain Decl., Ex. H); Harris Dep., 114:10-117:13, 118:6-119:21, 121:13-122:2 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22 (Appx.-Sain Decl., Ex. M). |
| 49. During these attempts to put Serrano's arms behind his back, the Officer Defendants' knees were on the ground. | 49. Salazar Dep., 251:1-4 (Appx.-Sain Decl., Ex. H); Ed. Hernandez Dep., 136:3-137:25 (Appx.-Sain Decl., Ex. B); *see* Bornsheur Dep., 51:13-17, 68:21-74:16 (Appx.-Sain Decl., Ex. M) |
| 50. However, Serrano resisted by pulling his arms underneath his torso, grunting, and kicking as Serrano moved to try to get up off the ground – including repeated push-up like movements where his chest was clear of the ground. | 50. Salazar Dep., 214:4-11, 219:13-21, 240:2-242:5 (Appx.-Sain Decl., Ex. H); Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M); |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| | *see* Ed. Hernandez Dep., 138:14-140:2, 140:7-18, 141:6-19, 142:7-23, 144:20-146:2, 149:11-22, 150:18-151:9, 152:5-153:1 (Appx.-Sain Decl., Ex. B). |
| 51. After 45 seconds of grappling with Serrano, with the officers becoming exhausted by Serrano's resistance to their efforts to keep him down on the ground by holding onto his arms, Bornsheur and Salazar managed to get a handcuff on Serrano's right wrist. | 51. Salazar Dep., 214:18-215:17, 240:2-242:5, 242:10-243:16 (Appx.-Sain Decl., Ex. H); Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M); *see* Ed. Hernandez Dep., 147:15-19, 149:12-19, 150:18-151:9 (Appx.-Sain Decl., Ex. B). |
| 52. But Serrano continued resisting by pulling against their efforts to put him flat on the ground, and he rolled somewhat onto his left side. | 52. Salazar Dep., 242:10-245:7 , 250:7-251:14 (Appx.-Sain Decl., Ex. H); Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M). |
| 53. At about 5:37:20 p.m., Sgt. Bornsheur | 53. Composite 911-Dispatch-TASER |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| then radioed for more back-up officers. | recordings (Appx.-Sain Decl., Ex. F) at 5:37:20-5:37:26; Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M). |
| 54. After grappling failed to secure Serrano's left arm, Officer Harris delivered **two knee-strikes** to Serrano's left armpit, which caused Serrano's left arm to come out from under his body. | 54. Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M). |
| 55. Serrano then grabbed for Officer Harris' TASER, which prompted Officer Harris to **punch Serrano twice** in the face; Serrano then released the TASER. | 55. Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 56. Sgt. Bornsheur and Officer Salazar then tried to pull Serrano's cuffed right arm behind his back, but Serrano continued to resist their efforts by pulling his arm away, rolling, and kicking – despite further commands to stop, lay down, and put his hands behind his back, including Spanish commands to stop resisting. | 56. Salazar Dep., 240:2-245:7 (Appx.-Sain Decl., Ex. H); Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16 (Appx.-Sain Decl., Ex. M). |
| 57. In response, Sgt. Bornsheur **punched Serrano three to four times** between his shoulder blades using the palm-side of his fist to try to get Serrano to release his arms. | 57. Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 58. At this point, Officer Harris managed to pull Serrano's left hand behind his back. | 58. Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Salazar Dep., 240:2-245:7 (Appx.-Sain Decl., Ex. H); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 59. A second pair of handcuffs was attached to Serrano's left wrist, and both sets of handcuffs were then connected behind Serrano's back to a third set of cuffs. | 59. Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 60. After he was handcuffed, Serrano continued to roll left to right, make exertion noises, kick, and bring his knees forward to begin to kneel and try to stand. | 60. Harris Dep., 114:10-117:13, 118:6-120:5, 121:13-122:2, 123:14-124:17, 124:22-126:13 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 61. In response, Sgt. Bornsheur radioed that Serrano was still resisting by stating that Serrano was "cuffed but not secured" – at about 5:38:16 p.m., ~ 2 minutes and | 61. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:38:16-5:38:27; Bornsheur Dep., 63:7-66:1, 66:24-67:22, |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 10 seconds after the last TASER discharge. | 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 62. In response, one of the officers requested at hobble – a device to restrain kicking legs – at about 5:39:13 p.m. | 62. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:39:13-5:39:22; Salazar Dep., 240:2-245:7 (Appx.-Sain Decl., Ex. H); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 63. Officer Salazar also pulled on Serrano's legs to straighten them at this point, as Serrano continued to speak in Spanish, while Officer Harris tried to hold Serrano down on the ground by the arm: at this point, Sgt. Bornsheur was kneeling on the ground beside Serrano on the right, Officer Harris was in the same position to Serrano's left, and Officer Salazar was by the legs of Serrano. | 63. Salazar Dep., 240:2-245:7 (Appx.-Sain Decl., Ex. H); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M). |
| 64. As Serrano continued to struggle as before, Sgt. Bornsheur requested medical aid, at about 5:39:46, because Serrano had been tased. | 64. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:39:46-5:39:53; Harris Dep., 126:8-128:15 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| | (Appx.-Sain Decl., Ex. M). |
| 65. Then, at about 5:40:48 p.m., after about 5 minutes and 31 seconds of continuous resistance and exertion by Serrano, Serrano abruptly stopped moving and Officer Salazar radioed that Serrano was unconscious. | 65. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:40:48-5:40:59; Salazar Dep., 240:2-245:7, 252:5-8, 261:2-19 (Appx.-Sain Decl., Ex. H); Harris Dep., 126:8-128:15, 130:19-131:7 (Appx.-Sain Decl., Ex. I); Bornsheur Dep., 63:7-66:1, 66:24-67:22, 68:21-74:16, 76:5-18 (Appx.-Sain Decl., Ex. M); *see* Ed. Hernandez Dep.,148:16-21, 149:23-150:1, 150:18-151:9, 161:22-162:2 (Appx.-Sain Decl., Ex. B). |
| 66. In response, the officers checked Serrano's pulse, rolled Serrano onto his back, and Officers Salazar and Harris immediately began performing CPR on Serrano in an attempt to revive him. | 66. Salazar Dep., 261:2-263:12 (Appx.-Sain Decl., Ex. H); Harris Dep., 129:19-130:12; Martinez Dep., 25:5-18, 32:1-4, 38:24-39:21, 42:3-11, 42:24-43:13, 44:18-45:1 (Appx.-Sain Decl., Ex. P); Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:42:38-5:42:43. |
| 67. Colton paramedics arrived on the scene, at about 5:44:22, took over CPR, and eventually Serrano was transported to a | 67. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:44:22-5:44:27; Salazar |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.
- 18 -

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| local hospital, where he was pronounced dead at about 6:23 p.m. | Dep., 265:11-17 (Appx.-Sain Decl., Ex. H); *see also* Mendez Belt Recording (Appx.-Sain Decl., Ex. U); Colton Fire Dept. logs & Am. Med. Response logs  (Appx.-Sain Decl., Ex. V). |
| 68. San Bernardino County medical examiner Dr. Glenn Holt conducted an autopsy on Serrano on January 18, 2012. | 68. Holt Dep., 117:10-14 (Appx.-Sain Decl., Ex. L) |
| 69. Dr. Holt noted that Serrano's body temperature was measured at 102.2°F a full 23 minutes *after* his death, on a night when the air temperature was 55°F, and despite the fact that the body temperature of an average *living* person is 98.6°F. | 69. Holt Dep., 52:5-55:10 (Appx.-Sain Decl., Ex. L) |
| 70. Dr. Holt also obtained a femoral blood sample from Serrano showing Serrano had 2.7 mg/L of methamphetamine in his system: many times above the typical toxic amount. | 70. Holt Dep., 55:17-60:19, Dep. Ex. 5 (Appx.-Sain Decl., Ex. L) |
| 71. Dr. Holt also observed 2 sets of TASER puncture marks on Serrano: one set with one mark on the right rib cage toward the back and the other mark on the back by the right shoulder blade; and the other set with one mark on the right mid-back and the other mark on the right lower back | 71.  Holt Dep., 62:4-15, 65:12-73:13 (Appx.-Sain Decl., Ex. L); *see also* Martinez Dep., 73:21-76:4 (no injuries observed on Serrano's body) (Appx.-Sain Decl., Ex. P). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| by the buttocks – but he observed *no* TASER marks or wounds to the front of Serrano's body or on his chest. | |
| 72. Dr. Holt also observed: some bruises/abrasions to Serrano's nose, right eyebrow, and right knee consistent with contact with the ground; a bruise on the chest consistent with CPR; a sub-cutaneous discoloration along the right back between the shoulder blades consistent with a punch; discoloration on the hands, arms, and wrists consistent with a struggle to get a subject's hands into cuffs; and signs of medical intervention – but he observed no fractures in the arms/hands. | 72. Holt Dep., 65:12-23, 67:11-69:13, 73:14-78:5, 143:16-24, 144:10-12 (Appx.-Sain Decl., Ex. L); *see also* Martinez Dep., 73:21-76:4 (no injuries observed on Serrano's body) (Appx.-Sain Decl., Ex. P). |
| 73. Based on his examination, Dr. Holt specifically excluded: (1) asphyxia; (2) TASER electricity; and (3) blunt force trauma as any cause or contributing factor in Serrano's death. | 73. Holt Dep., 92:15-93:25, 107:25-108:15, 110:6-111:8, 112:8-24, 141:25-142:8, 145:5-146:2 (Appx.-Sain Decl., Ex. L); *accord* Dawes Decl., Report pp. 4-11 (Appx.-Sain Decl., Ex. O); Wetli Decl., Report pp. 3-4 (Appx.-Sain Decl., Ex. Q); Hall Decl., Report pp. 1-19 (Appx.-Sain Decl., Ex. BB); Chan Decl., Report pp. 2-4 (Appx.-Sain Decl., Ex. R); *cf*. O'Halloran Dep., 80:13- |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
|  | 24, 86:16-20  (Appx.-Sain Decl., Ex. T – Subject to Objection re Admissibility; agreeing that TASER electricity was not a cause of Serrano's death). |
| 74. Dr. Holt testified that the cause of Serrano's death was "excited delirium": a condition arising from methamphetamine toxicity that results in cardiac arrest. | 74. Holt Dep., 94:13-95:7, 95:19-101:24, 106:13-107:3, 111:9-13, 142:9-143:3 (Appx.-Sain Decl., Ex. L); *accord* Wetli Decl., Report pp. 3-4 (Appx.-Sain Decl., Ex. Q); Hall Decl., Report pp. 1-19 (Appx.-Sain Decl., Ex. BB); Clark Decl., Report (Appx.-Sain Decl., Ex. S). |
| 75. Dr. Holt testified that the contributing factors in Serrano's death were: (a) Serrano's obesity; (b) Serrano's pre-existing cardiac condition (cardiomegaly – an enlarged heart); and (c) Serrano's resistance to restraint. | 75. Holt Dep., 87:15-88:2, 89:21-91:23, 103:21-105:9, 107:13-24, 114:7-16, 143:4-15 (Appx.-Sain Decl., Ex. L); *accord* Dawes Decl., Report pp. 4-11 (Appx.-Sain Decl., Ex. O); Wetli Decl., Report pp. 3-4 (Appx.-Sain Decl., Ex. Q); Hall Decl., Report pp. 1-19 (Appx.-Sain Decl., Ex. BB); Chan Decl., Report pp. 2-4 (Appx.-Sain Decl., Ex. R). |
| 76. Notwithstanding the foregoing, plaintiffs' expert inadmissibly opined that Serrano died as the result of compression of his chest on the ground | 76. O'Halloran Dep., 45:17-48:2, 51:12-53:19, 110:16-111:4 (Appx.-Sain Decl., Ex. T – Subject to Objection re Admissibility). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| by officer body weight to his back resulting in asphyxia. | |
| 77. However, plaintiffs' expert admitted that the sources he relied upon for such a conclusion did *not* show that the officers placed their body weight on Serrano's back for the 2-5 consecutive minutes that plaintiffs' expert said would be needed to cause asphyxia, and that he had *not* reviewed the sworn testimony of the witnesses that excluded any officer placing body weight on Serrano's back so as to compress his chest on the ground for 2-5 minutes before Serrano became unconscious. | 77. O'Halloran Dep., 34:17-38:14, 40:14-16, 44:8-24, 54:9-23, 59:2-13, 61:2-13, 68:7-69:10, 69:25-70:8, 77:6-18, 79:6-19, 87:18-89:2, 90:21-91:12, 92:7-19, 93:10-94:15, 95:21-98:25, 99:11-17, 107:11-18, 108:25-109:21, 125:8-25 (Appx.-Sain Decl., Ex. T – Subject to Objection re Admissibility). |
| 78. Plaintiffs' expert also admitted that, if asphyxia were excluded, the most likely medical cause of death was methamphetamine intoxication with Serrano's obesity and exertion as contributors. | 78. O'Halloran Dep., 48:3-49:1, 49:24-51:11, 62:25-63:22, 78:4-16, 120:1-121:4, 122:8-23 (Appx.-Sain Decl., Ex. T – Subject to Objection re Admissibility); *see also* Wetli Decl., Report pp. 3-4 (Appx.-Sain Decl., Ex. Q); Hall Decl., Report pp. 1-19 (Appx.-Sain Decl., Ex. BB); Chan Decl., Report pp. 2-4 (Appx.-Sain Decl., Ex. R); Dawes Decl., Report pp. 4-11 (Appx.-Sain Decl., Ex. O); Clark Decl., Report |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
|  | (Appx.-Sain Decl., Ex. S). |
| 79. Several of Serrano's family members were eyewitnesses to portions, *but not all*, of the incident interaction between the Officer Defendants and Serrano. | 79. Defendants incorporate by reference here the record citations for UF 80-87, *infra*. |
| 80. **Gabriela** witnessed some of the incident interaction before TASERs were used: but, other than CPR, the only physical contact she saw between any officer and Serrano was: (a) an officer kicking Serrano in the knee while Serrano was still standing upright, causing him to go to the ground onto his knees; and (b) two officers pulling Serrano by the shirt while he was upright on his knees. | 80. G. Serrano Dep., 194:12-19, 195:5-7, 196:18-197:3, 197:16-25, 199:10-15, 215:9-216:18, 219:2-19, 222:10-17 (Appx.-Sain Decl., Ex. C). |
| 81. **Teresa** witnessed some of the interaction before TASERing, but the only physical contact she saw was one officer strike Serrano once on the head and once on the shoulder, with an unidentified object, while Serrano was still upright. | 81. T. Hernandez Dep., 117:14-118:17 (Appx.-Sain Decl., Ex. W). |
| 82. The only physical contact Serrano's eldest daughter, **B.S.**, saw was an officer pushing Serrano toward the ground when Serrano was still on his knees. | 82. B. Serrano Dep., 80:24-81:8, 90:17-91:8, 93:5-23, 95:12-20, 103:16-24 (Appx.-Sain Decl., Ex. X); *see also* Dkt. Doc. 32, 33 (stipulation and order that minors G.S. and G.L.S. have no |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| | knowledge of the incident use of force/restraint). |
| 83. The only physical contact that **Efrain Sr.** saw before CPR-like revival efforts was: (a) an officer kicked Serrano in the knee while Serrano was still standing; (b) two officers pushed Serrano around on his feet with open hands; (c) an officer punched Serrano's left shoulder blade with two fists while Serrano was still standing; (d) an officer struck Serrano in the right bicep with a flashlight twice, causing Serrano to fall to his knees; (e) while Serrano was on his knees, the officers pulled him around by his shirt; (f) after then hearing (but not seeing) TASER discharges, when he saw Serrano slump from a kneeling position into a sitting position and then fall onto his back, the last physical contact he observed was chest compressions. | 83. Ef. Hernandez Sr. Dep., 90:24-91:8, 92:25-93:15, 95:20-96:9, 97:13-17, 99:14-25, 102:16-25, 103:23-104:4, 105:7-10, 108:13-109:18, 112:4-117:21, 119:8-120:5, 120:15-21, 122:2-5, 128:8-22, 131:14-18, 132:15-133:4, 133:19-22, 134:7-11, 135:15-137:2, 149:14-24, 152:5-9, 152:18-153:23 (Appx.-Sain Decl., Ex. Y). |
| 84. The only physical contact that **Maria Hernandez** (Efrain Jr.'s wife) saw occurred after all TASERing was over, and after the neighbor screamed that Serrano was dead: when she saw an officer with a single knee on a | 84. M. Hernandez Dep., 85:11-86:16 (Appx.-Sain Decl., Ex. Z). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| motionless Serrano's back <u>at the waistband</u> for ~ 30 seconds, with Serrano in cuffs. | |
| 85. The only physical contact that **Eduardo** saw also occurred after all TASERing was over: when he saw an officer roll Serrano onto his stomach by a grip on the tricep, and then saw the Hispanic officer pushing or punching Serrano in the back, in response to Serrano's push-ups off the ground, while the officer was seated with the officer's butt on Serrano's thighs, trying to get Serrano's hands behind his back. | 85. Ed. Hernandez Dep., 97:1-10, 117:9-118:2 123:1-13, 126:22-127:10, 130:3-7, 136:3-137:25, 138:14-140:2, 140:7-18, 141:6-19, 142:7-145:3, 144:20-146:2, 148:16-21, 149:12-22, 151:5-9, 151:23-152:16, 152:23-153:1, 149:23-150:10, 156:6-158:3, 159:5-10, 160:1-161:6, 167:2-6, 170:7-18,173:3-10, 172:20-173:2, 177:19-22 (Appx.-Sain Decl., Ex. B). |
| 86. **Efrain Jr.** testified that the only physical contact he saw before CPR was: (a) between the first and second TASER discharges, when the Hispanic officer had a knee on a prone Serrano's upper back for 15 *seconds* leading up to and overlapping the second TASER discharge; and (b) after all TASERing was over, and <u>after Serrano was already motionless</u>, when two officers' torsos were leaning over/laying on Serrano's back. | 86. Ef. Hernandez Jr., 65:8-14, 65:19-21, 66:3-4, 64:25-65:7, 66:11-15, 66:19-23, 67:6-11, 67:23-68:2, 75:15-76:13, 76:19-77:14, 79:9-13, 80:7-81:2, 81:24-82:23, 82:24-83:3, 84:5-10, 85:2-9, 85:19-24, 86:16-87:1, 87:25-88:5, 88:18-24, 91:17-21, 94:9-96:3, 96:10-97:6, 97:12-20, 98:10-99:1, 99:6-12, 100:10-22, 101:2-5, 103:20-104:10, 107:24-108:12 (Appx.-Sain Decl., Ex. J). |

| UNDISPUTED MATERIAL FACT(S) | EVIDENCE IN SUPPORT |
|---|---|
| 87. But, the evidence also shows that: (1) Efrain Jr. testified that he did *not* see more than 15 *seconds* of contact to a prone Serrano's back *before* Serrano was motionless; (2) Efrain Jr.'s claim about the knee-on-back for 15 seconds just before the second TASER is disproved by the TASER videos; (3) Efrain Jr. testified that when, post-TASERing, he allegedly saw officers "on top of" Serrano's back, after Serrano was motionless, he could *not* see if the officers were actually touching Serrano's back; and (4) Efrain Jr. also testified that he did *not* see *any* contact between the officers and Serrano after all TASERing was over. | 87. Composite 911-Dispatch-TASER recordings (Appx.-Sain Decl., Ex. F) at 5:34:46-5:36:15; Ef. Hernandez Jr., 90:5-8, 95:9-17, 96:10-21, 97:12-20, 98:10-15, 99:6-12, 107:24-108:12, 111:8-112:14 (Appx.-Sain Decl., Ex. J). |

SEPARATE STATEMENT OF UNDISPUTED FACTS RE OFFICERS' M.S.J.

## <u>STATEMENT OF CONCLUSIONS OF LAW</u>

I.    The Officer Defendants are entitled to summary judgment as to all of plaintiffs' operative claims sounding in **excessive/unreasonable force** (the First Cause of Action for Excessive Force, pursuant to 42 U.S.C. § 1983; the Eighth Cause of Action for Battery by a Peace Officer/Excessive Force, pursuant to California law; the Fourth Cause of Action for Bane Act Violations, pursuant to California law; and the Seventh Cause of Action for Negligence in Arrest/Use of Force, pursuant to California law) and all of plaintiffs' operative claims sounding in **wrongful death** (the Second Cause of Action for Deprivation of Familial Association/Due Process Violation, pursuant to 42 U.S.C. § 1983; and the Sixth Cause of Action for Wrongful Death, pursuant to California law) – in other words, on all of plaintiffs' operative claims – on the grounds that the uncontraverted evidence shows that the Officer Defendants' uses of force/restraint upon decedent HUTALIO SERRANO ("Serrano") were **objectively reasonable** from the perspective of a reasonable peace officer under the totality of the circumstances as a matter of law – particularly each use of force or restraint was preceded and provoked by Serrano's failure to follow multiple officer commands in Spanish and English, Serrano making potentially threatening movements (such as reaching into places where unseen weapons could be hidden), Serrano's battery on Officer Salazar, and/or Serrano's violent physical resistance to the defendant officers' attempts to subdue him.

II.    The Officer Defendants are entitled to summary judgment as to all of plaintiffs' operative **federal law claims arising from uses of force/restraint** (the First Cause of Action for Excessive Force, pursuant to 42 U.S.C. § 1983; the Second Cause of Action for Deprivation of Familial Association/Due Process Violation, pursuant to 42 U.S.C. § 1983) on the grounds that the uncontraverted evidence shows that even if the Officer Defendants' uses of force/restraint on decedent Serrano were not objectively reasonable as a matter of law (which they were), under the totality of the circumstances, it was reasonable for the Officer Defendants to (mistakenly) believe

that their uses of force/restraint on Serrano were lawful, and thus that the Officer Defendants are entitled to **qualified immunity**.

III.    The Officer Defendants are entitled to summary judgment as to all of plaintiffs' operative claims sounding in **wrongful death** (the Second Cause of Action for Deprivation of Familial Association/Due Process Violation, pursuant to 42 U.S.C. § 1983; and the Sixth Cause of Action for Wrongful Death, pursuant to California law) on the grounds that the uncontraverted evidence shows that the Officer Defendants' uses of force/restraint upon decedent Serrano did not cause Serrano's death (even under plaintiffs' unsupported theory of the case).

IV.    Plaintiffs' **vicarious liability** claims under California law (the Fourth, Sixth, and Seventh Causes of Action) cannot proceed against non-moving party defendant CITY OF COLTON ("City") because the City is immune from vicarious liability where its employees/police officers are not/cannot be liable.

V.    Defendants are entitled to summary judgment as to plaintiffs' **punitive damages claims** because there is no evidence that any of the Officer Defendants acted with malice, oppression, fraud, or reckless disregard toward decedent Serrano.

Dated: September 8, 2014

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _/s/ Tony M. Sain_____
    Mildred K. O'Linn, Esq.
    Tony M. Sain, Esq.
Attorneys for Defendants,
CITY OF COLTON, SGT. ROBBIE BORNSHEUR, OFFICER WADE HARRIS, AND OFFICER SAUL SALAZAR