UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (DKT. 137)**

**I.   Introduction**

This action was brought by the estate ("Estate") of Hutalio Serrano-Granados ("Serrano"), Gabriela Serrano, and her children B.S., G.L.S. and G.S. (collectively, "Plaintiffs") against Saul Salazar, Wade Harris, Robbie Bornsheur, DOES 4-10[1] ("Defendants"), and the City of Colton. Dkts. 3, 48-1. Plaintiffs contend that on January 15, 2012, Colton Police Department Officers Saul Salazar, Wade Harris and Robbie Bornsheur unlawfully detained Serrano, used excessive force to restrain him and caused his death. Dkt. 48-1. Plaintiffs seek compensatory and punitive damages. *Id.* The City of Colton moved for summary judgment on May 12, 2014. That motion was granted in part on June 23, 2014. Dkts. 34, 99.

After further proceedings, the following six claims remained against Defendants: (i) Unlawful Seizure and Excessive Force in Violation of 42 U.S.C. § 1983 and the Fourth Amendment; (ii) Deprivation of Substantive Due Process in Violation of § 1983 and the 14th Amendment; (iii) Violation of Cal. Civ. Code § 52.1(b) (the "Bane Act"); (iv) Wrongful Death under Cal. Code Civ. Proc. § 377.60; (v) Negligence; and (vi) Battery. Dkts. 48, 99, 131, 134.  On September 8, 2014, Defendants filed a Motion for Summary Judgment ("Motion" (Dkt. 137)) as to all of these claims and as to the demand for punitive damages. Plaintiffs filed their opposition on September 15, 2014 (Dkt. 145), and Defendants replied on September 22, 2013. Dkt. 153.

After a hearing on the Motion on October 6, 2014, the matter was taken under submission. Dkt. 160. For the reasons set forth in this Order, the Motion is GRANTED as to the substantive due process and Bane Act causes of action against all Defendants, and as to the negligence cause of action against

---

[1] Only Plaintiffs' remaining claim of negligence is brought against DOES 6-10. Because DOES 6-10 are among the officer-defendants who filed the Motion, this Order includes them in the group "Defendants."  Plaintiffs do not, however, allege that DOES 6-10 directly participated in the detention or use of force against Serrano.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

DOES 6-10, but is DENIED as to all other causes of action and as to the claim for punitive damages.

## II.     Factual Background

### A.     Salazar Arrives in Response to the Request for Police Assistance

On January 15, 2012, Serrano went to the residence where his wife and children resided. Dkt. 145-1, ¶ 7. His family members observed that he "appeared disoriented and [was] walking in traffic, causing them to be concerned he might get hurt." *Id.* ¶ 9. After Serrano's wife, Gabriela Serrano, asked her son, Eduardo Hernandez, to call the police, he did so. *Id.* About 14 minutes after that call, Salazar arrived outside the residence in a marked patrol car; he wearing his Colton Police Department uniform. *Id.* ¶ 12. Salazar encountered Serrano in a parking lot that is located near the residence. *Id.* ¶ 13. The Parties dispute what occurred thereafter.

Defendants contend that the following sequence of events occurred. Serrano ignored Salazar's initial instructions, approached Salazar and failed to give his name or identification as requested. *Id.* ¶ 14. Serrano was moving left and right, and "kept moving his hands toward the front and back of his waistband area," which "prompted Officer Salazar to become concerned for his safety and to order Serrano to stop moving." *Id.* ¶ 15. Salazar ordered Serrano to sit on the ground, but Serrano "quickly and repeatedly advanced on the officer so as to cause the officer to believe that Serrano was going to assault him." *Id.* ¶¶ 17-18. Eventually, Serrano kneeled on the ground instead of sitting, despite additional commands in Spanish that he should get all the way down on the ground. *Id.* ¶ 19. Serrano's hand movements made Salazar fear he was reaching for a weapon. Consequently, he struck Serrano's left arm with a flashlight twice as Serrano was reaching into his left pocket. *Id.* ¶¶ 21-22.

Plaintiffs contend that the following sequence of events occurred. Salazar apparently thought that Serrano was acting strangely and that he might be under the influence of drugs. *Id.* ¶ 15. Salazar "began to yell loudly at Salazar [sic] to get down, mostly in English, despite the fact that Serrano was answering him in Spanish." *Id.* Serrano got down on his knees, but [s]uddenly, Salazar struck Serrano in the upper body with a flashlight." *Id.* Serrano got up, but returned to his knees after Salazar continued to yell at him. *Id.*

The Parties do not dispute that, within two minutes after Salazar's arrival at the scene, he requested police backup. *Id.* ¶ 20. They also do not dispute that, other than bruises and scrapes that Serrano sustained while resisting being handcuffed, he did not suffer any injury to his arms. *Id.* ¶ 23.

### B.     Harris Arrives and Officers Fire TASERS at Serrano

Within nine minutes of Salazar's call, Officer Harris arrived at the scene. *Id.* ¶ 24. The Parties dispute what happened next.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

Defendants contend that Harris saw that Salazar was holding a TASER device,[2] and saw that Serrano was kneeling, sweating profusely and moving as though he were preparing to stand up. They also claim that this caused Harris to believe that Serrano was under the influence of narcotics. *Id.* ¶ 25. Harris told Salazar that he would push Serrano into a prone position on the ground. When he did so, Serrano pushed himself back into an upright kneeling position. *Id.* ¶¶ 26-27. Harris warned Serrano that he would be "tased" if he did not lie down. *Id.* ¶ 28. When Serrano refused to comply, Harris stated in a radio transmission that Serrano was being uncooperative. *Id.* Salazar holstering his TASER as he approached Serrano and tried to handcuff him. *Id.* ¶ 31. Serrano said the Spanish word for death ("muerte"), grabbed Salazar's left arm and pulled him downward. *Id.* ¶ 32. In response, Harris deployed his TASER in dart mode,[3] striking Serrano for a five-second discharge. *Id.* ¶ 33. However, Serrano began to roll to defeat the effect of the TASER and to brush its wires. In response, Harris discharged his TASER a second time. *Id.* ¶¶ 35-36. Serrano still refused to comply, so Salazar discharged his TASER several times. *Id.* ¶¶ 38-43.

According to Plaintiffs, the events were different. They contend that, as soon as Harris arrived, he "immediately walked up to Serrano and kicked him," and that Serrano appeared afraid. *Id.* ¶ 25. Both officers yelled loudly at him, mostly in English, and he got on his knees and said "por favor," which both officers understood to mean "please" in Spanish. *Id.* Serrano remained on his knees, and reached inside the chest of his sweatshirt and pulled out a crucifix. *Id.* ¶ 32. When Salazar grabbed Serrano's arm to apply hand cuffs, Serrano "turned toward the officer while on his knees and moved his right arm toward his left wrist, and suddenly, Harris immediately deployed his Taser in a dart mode at Serrano." *Id.* Serrano immediately fell to the ground and "began emitting noises as if he was in pain." *Id.* ¶ 36. Serrano rolled on the ground. Plaintiffs' expert expresses the opinion that this is not an uncommon response after a person is shot with a TASER. *Id.* ¶ 35. Salazar and Harris continued firing their TASERS at Serrano, who pleaded with the officers to stop by "yelling 'por favor,' over and over again." *Id.* ¶ 36.

The Parties do not dispute that there were a total of seven TASER discharges, and that no further discharges occurred after Bornsheur arrived at the scene. *Id.* ¶ 44. They also agree that the TASER electricity did not directly cause Serrano's death. *Id.* ¶ 73; *see also* O'Halloran Dep., Dkt. 143, Exh. T at 16-17 (statement of Plaintiffs' expert that "it's not 100 percent, but the longer past 20 seconds before the collapse, the less likely it is that the darts caused the cardiac arrest, arrhythmia"). Each TASER was equipped with a video recording feature. As a result, videos were recorded during a portion of these events. The Parties disagree as to the proper interpretation of these recordings. Dkt. 141, Exh. F.

      **C.    Bornsheur Arrives and Serrano Is Subdued and Handcuffed**

The Parties dispute what happened after Bornsheur arrived.

---

[2] A TASER is an electrical weapon that incapacitates its subjects by delivering powerful electrical charges into their skeletal muscles, which, at high enough levels of stimulation, prevents voluntary muscle control. Decl. of Donald M. Dawes, M.D., Dkt. 142, Exh. O at 4-5.
[3] In dart mode, a TASER propels two probes toward the subject that are intended to pierce his or her clothing or skin and thereby create a circuit through which electricity may pass. *Id.* at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

Defendants contend that Serrano was "screaming at the officers, waving his arms, and pulling at the TASER wires attached to him, despite officer commands to lay down on his stomach." Dkt. 145-1, ¶ 46. Serrano physically resisted when the officers tried to grab him by the arm and roll him onto his stomach. *Id.* ¶ 47. Bornsheur and Salazar "tried to pull Serrano's right arm behind his back, from a position to the right of Serrano, while Officer Harris tried to pull Serrano's left arm behind his back from a position to the left of Serrano." *Id.* ¶ 48. During these attempts, the officers' knees remained on the ground. *Id.* ¶ 49. After a struggle of 45 seconds, Bornsheur and Salazar handcuffed Serrano's right wrist. *Id.* ¶ 51. Serrano continued to resist, and Bornsheur radioed for more back-up police officers. *Id.* ¶¶ 52-53.

Harris then delivered "two knee-strikes to Serrano's left armpit, which caused Serrano's left arm to come out from under his body" so the officers could cuff his left wrist. *Id.* ¶ 54. When Serrano reached for Harris's TASER, Harris punched Serrano twice in the face. *Id.* ¶ 55. Serrano continued to resist by rolling, kicking, and pulling, thereby disobeying the commands of the officers. *Id.* ¶ 56. The officers succeeded in placing Serrano's left wrist into a different set of cuffs, and the two sets of handcuffs were connected behind Serrano's back by using a third set. *Id.* ¶ 59. Serrano continued to resist, and Bornsheur radioed that Serrano was "cuffed but not secured" about two minutes and ten seconds after the last TASER discharge. *Id.* ¶¶ 60-61. One of the officers requested a hobble, or leg restraint device. *Id.* ¶ 62. The three officers kneeled around, but not on top of, Serrano, to hold him down: "Sgt. Bornsheur was kneeling on the ground beside Serrano on the right, Officer Harris was in the same position to Serrano's left, and Officer Salazar was by the legs of Serrano." *Id.* ¶ 63.

Plaintiffs disagree with this description of the events. They contend that: "None of the witnesses saw Serrano take any offensive or aggressive action against the officers at any time. He didn't even resist arrest." *Id.* ¶ 55. The officers "jumped on top of Serrano, rolling him on his stomach and attempting to handcuff him." *Id.* ¶ 47. The officers "were on top of Serrano's body from the waist up, trying to hold him down. Witnesses saw that Salazar had his knee on Serrano's back." *Id.* (citations omitted). Harris "punched Serrano several times." *Id.* Serrano "appeared to struggle to push himself up, but the officers applied superior pressure to keep him pinned to the ground." *Id.*

The Parties do not dispute that "at about 5:40:48 pm, after about 5 minutes and 31 seconds of continuous resistance and exertion from Serrano, he abruptly stopped moving and Officer Salazar radioed that Serrano was unconscious." *Id.* ¶ 65.

### D.     Serrano Stops Breathing and Is Pronounced Dead

When Serrano stopped moving, the officers checked his pulse and rolled him on his back. Salazar and Harris then began performing CPR in an attempt to revive Serrano. *Id.* ¶ 66. Paramedics arrived on the scene at about 5:44:22 p.m. and took over the CPR process. They transported Serrano to a local hospital when they were unable to revive him. *Id.* ¶ 67. Serrano was pronounced dead at approximately 6:23 p.m. *Id.* San Bernardino County medical examiner Dr. Glenn Holt performed an autopsy on Serrano on January 18, 2012. *Id.* ¶ 68. Holt found that Serrano's body temperature was 102.2 degrees Fahrenheit at the time of his death, and that Serrano had a high level of methamphetamine in his blood. *Id.* ¶¶ 69-70.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

The Parties dispute the cause of death. Dr. Holt opines that asphyxia, TASER electricity and blunt force trauma were not possible causes of Serrano's death. *Id.* ¶ 73. His autopsy report concluded that the cause of death was "[e]xcited delirium in presence of law enforcement restraint." Dkt. 142 at 41.[4] Excited delirium is "a condition arising from methamphetamine toxicity that results in cardiac arrest." Dkt. 145-1, ¶ 74. Defendants interpret Dr. Holt's report to mean that "the official cause of death [is,] in lay terms, cardiac arrest from meth abuse." Reply, Dkt. 153 at 8.

Plaintiffs contend that "Serrano died of cardiac failure, which Ronald L. O'Halloran, M.D., the former Coroner of Ventura County, opined was due to 'Restraint Asphyxia' because of the extensive compression on Serrano by the combined body weight of the officers while in a prone position, for two to three minutes." Opp'n, Dkt. 145 at 9.

### III.   Procedural Background

####   A.   Commencement of Suit

On March 21, 2013, Plaintiffs Gabriela Serrano, B.S., G.L.S., G.S., and Estate lodged the Complaint. Dkt. 1. The Complaint was not filed because the application was pending through which Gabriela Serrano sought to be appointed Guardian ad Litem for B.S., G.L.S., and G.S. After this application was granted on May 16, 2013, the Complaint was filed on May 21, 2013. Dkts. 2-3. The Complaint included the following nine causes of action against the following respective defendants:

---

[4] At his deposition, Dr. Holt conceded that law enforcement restraint may have contributed to the methamphetamine-influenced cardiac arrest that caused the death of Serrano. Holt Dep'n, Dkt. 142 at 21. However, upon questioning by Defendants, Holt clarified that restraint alone probably did not cause this cardiac arrest, but that it was more likely precipitated by an elevated heart rate caused by exertion in resistance to restraint. *Id.*

> Q. So . . . it is not the fact that the person is in restraints or being restrained that causes the person to suffer cardiac arrest; correct?
> A. Not in and of itself. It's in the context of the situation.
> Q. It's not the restraint that causes or contributes to the cardiac arrest? For example –
> A. Okay. It has been suggested that, in terms of advice to police departments, techniques to have a more prolonged cool down time, for example, might be something that could –
> . . . .
> Q. . . . what I'm trying to get to is the act of restraint, somebody restraining another person, if there's no resistance to that restraint, does the act of restraint itself produce cardiac arrest in the excited delirium case or in the physical exertion with cardiac condition case?
> A. The short answer would be no, but I guess one would ask why would they be restrained if they're not resisting, but if someone lays down and they're retrained but they're not struggling against it, no, there's not an increased risk.

*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV13-00519 JAK (JEMx) | | Date | October 14, 2014 |
|---|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | | |

| Cause of Action | DOES 1-5 | DOES 6-10 | City of Colton |
|---|---|---|---|
| 1. Unlawful Seizure and Excessive Force in Violation of § 1983 and the Fourth Amendment | X | | |
| 2. Deprivation of Substantive Due Process in Violation of § 1983 and the 14th Amendment | X | | |
| 3. *Monell* Claim for Violation of Civil Rights | | X | X |
| 4. Civil Rights Violations – Cal. Civ. Code §§ 51.7, 52.1(b); Cal. Const. art. 1, § 13 | X | | X |
| 5. Violation of Cal. Const. art. 1, § 13 – Freedom from Illegal Seizure and Excessive Force | X | | X |
| 6. Violation of Cal. Const. art. 1, § 7 – Right to Familial Relationship | X | | X |
| 7. Wrongful Death – Cal. Code Civ. P. § 377.60 | X | | X |
| 8. Negligence – Cal. Gov't Code § 815.2 | X | X | X |
| 9. Battery | X | | X |

Dkt. 3.

On May 19, 2014, Plaintiffs moved for leave to file a First Amended Complaint ("FAC"). Dkt. 48. The FAC altered the Complaint in the following ways: (i) it named Salazar, Harris, and Bornsheur in place of DOES 1-3 (Dkt. 48-1); (ii) it omitted the Civil Code Section 51.7 claim from the fourth cause of action. (*id.* ¶¶ 30-34); and (iii) it omitted the sixth cause of action, which had alleged a violation of Article 1, Section 7 of the California Constitution. *Id.* at 1.

### B. The Prior Order on the City of Colton's Motion for Summary Judgment

On May 12, 2014, the City of Colton moved for summary judgment as to all claims in which it was a defendant ("Colton Motion" (Dkt. 34)). On June 16, 2014, after a hearing on the Plaintiffs' motion for leave to amend and the Colton Motion, both motions were taken under submission. Dkt. 95. On June 23, 2014, an Order was issued that granted Plaintiffs' motion for leave to amend and granted the Colton Motion in part ("Colton Order"). Dkt. 99.

The Colton Order first addressed Gabriela Serrano's standing to pursue claims on behalf of the Estate. *Id.* at 6-7. Because Gabriela Serrano had not yet been named the personal representative of the Estate, the Colton Order concluded that she lacked standing to pursue claims under the general survival-of-claims statute, Cal. Code Civ. Proc. § 377.30, but that she had standing to pursue wrongful death claims under § 337.60. Dkt. 99 at 6-7. Therefore, the Colton Order granted the Colton Motion as to Gabriela Serrano's Fourth Amendment claims insofar as they were based on the application of force other than what caused Hutalio Serrano's death. *Id.* at 6. For the same reason, the Colton Order granted the Colton Motion as to the Bane Act and battery claims. *Id.* at 12, 13. However, because a petition by Gabriela Serrano to be named personal representative of the Estate was then pending before the San Bernardino County Superior Court, the Colton Order stayed the dismissal of these claims pending a decision on that petition determination. *Id.* at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

The Colton Order next addressed Plaintiffs' *Monell* claim against the city for violation of federal civil rights by a public entity. *Id.* at 7 (referring to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Plaintiffs did not dispute that Salazar had reasonable suspicion to conduct an investigatory stop, or that the officers had probable cause to arrest Serrano. Dkt. 99 at 8. However, there were several genuine issues of material fact related to whether the officers used excessive force. These included:

>    (i) whether Serrano failed to comply with the commands of the officers;
>    (ii) whether Serrano acted in a threatening manner toward, or assaulted the officers;
>    (iii) whether the officers were on top of Serrano while they handcuffed him and then remained in that position for several minutes; and
>    (iv) whether the weight of the officers on Serrano's upper body caused his death through restraint asphyxia.

*Id.* at 10. However, Plaintiffs offered no evidence that a municipal policy, custom or practice was the moving force behind the conduct of the officers, as required to support a *Monell* claim. 436 U.S. at 690-91. Accordingly, the Colton Motion was granted as to this claim. Dkt. 99 at 11.

The City of Colton argued that Article 1, Sections 7 and 13 of the California Constitution do not create independent causes of action for individuals. Dkt. 34 at 12. Plaintiffs did not oppose this position as to the claims brought under these provisions. Consequently, the Colton Order granted the Colton Motion as to these claims. *Id.*

The Colton Motion was denied as to the wrongful death and negligence causes of action. The Colton Order concluded that there were genuine issues of material fact as to whether the detention and use of force by the officers were reasonable and whether the force caused Serrano's death. Another issue that could not be resolved by the Colton Motion was whether a public entity could be vicariously liable in a wrongful death or a negligence action under Cal. Gov't Code § 815.2. *Id.* at 13.

### C. Further Proceedings

The Colton Order both granted summary judgment as to the foregoing claims and gave Plaintiffs leave to file their FAC. On July 9, 2014, Defendants moved to dismiss and strike portions of the FAC on the ground that they had been adjudicated adversely to Plaintiffs in the Colton Order. Dkt. 125. On July 15, 2014, this motion was granted in part. Dkt. 131. The third (*Monell*) cause of action was dismissed in its entirety; the fourth cause of action was dismissed in part, *i.e.,* as to claims arising under Article I, Section 13 of the California constitution; the fifth cause of action was dismissed in its entirety because it also raised that claims under Article I, Section 13; and the seventh cause of action was dismissed in part, *i.e.,* to the extent that it asserted a negligence cause of action against the City on a theory of direct rather than vicarious liability. *Id.* at 2-3.

On July 7, 2014, the Superior Court of the County of San Bernardino appointed Gabriela Serrano the Administrator of the Estate. Dkt. 124. Thereafter, the Court vacated its summary judgment order as to the claims of the Estate. Dkt. 134. This revived the following claims: (i) violation of the Fourth

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

Amendment resulting from conduct that is not alleged to have caused Serrano's death; (ii) violation of Cal. Civ. Code § 52.1; and (iii) battery. *Id.* at 2.

### D. Claims in the First Amended Complaint as Modified by Subsequent Orders

The following chart summarizes the claims that remain in Plaintiffs' First Amended Complaint as modified by the Colton Order, the order on the motion to dismiss and strike, and the order vacating these orders in part:

| Cause of Action[5] | Salazar; Harris; Bornsheur; DOES 4-5 | DOES 6-10 | City |
|---|---|---|---|
| **1. Unlawful Seizure and Excessive Force in Violation of § 1983 and the Fourth Amendment** | X | | X |
| **2. Deprivation of Substantive Due Process in Violation of § 1983 and the 14th Amendment** | X | | X |
| **4. Civil Rights Violations – Civ. Code § 52.1(b)** | X | | X |
| **6. Wrongful Death – Cal. Code Civ. P. § 377.60** | X | | X |
| **7. Negligence** | X | X | X[6] |
| **8. Battery** | X | | X |

### IV. Analysis

#### A. Legal Standard

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id*. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed.

---

[5] The numbering is not continuous because it refers to the FAC's numbering of the causes of action.
[6] Only on a theory of vicarious liability. Dkt. 131 at 5-6.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

R. Civ. P. 56(e). In considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

> **B.** Application
>
>> 1. First Cause of Action: Unlawful Seizure and Excessive Force in Violation of § 1983 and the Fourth Amendment

The Estate claims that Defendants unlawfully seized Serrano and arrested him using excessive force, in violation of § 1983 and the Fourth Amendment. FAC, Dkt. 48-1, ¶¶ 12-20. Despite language to the contrary in the FAC, *id.* ¶ 15, Plaintiffs do not dispute that Salazar had reasonable suspicion to conduct an investigatory stop, or that Defendants had probable cause to arrest Serrano. Opp'n, Dkt. 145 at 10. Thus, Plaintiffs' first cause of action concerns the unconstitutional use of excessive force in two distinct phases: first, the non-deadly use of force during the detention and arrest of Serrano; second, the use of the force that Plaintiffs claim caused his death.[7]

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396. The Ninth Circuit performs this balancing in three steps:

> First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted. Next, we must evaluate the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. Third, we balance the gravity of the intrusion on the individual against the government's need for that intrusion. Ultimately, we must balance the force that was used by the officers against the need for such force to determine whether the force used was greater than is reasonable under the circumstances.

*Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citations and quotation marks omitted). "The parties['] 'relative culpability[,]' *i.e.*, which party created the dangerous situation and which party is more innocent, may also be considered. Finally, this court has often held that in

---

[7] Because Gabriela Serrano lacked standing to assert Serrano's non-deadly excessive force claims when the Colton Order was issued, these claims were not addressed there. Dkt. 99 at 7.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury." *Id.* (citations omitted).

        a)     Use of Non-Deadly Force Prior to Serrano's Death

           (1)     Type and Amount of Force Used

The Parties largely agree upon the type and amount of non-deadly force Defendants used against Serrano. Thus, after Serrano kneeled, Salazar struck him with a flashlight in the arm or upper body; this did not cause serious injury to Serrano. Dkt. 145-1, ¶¶ 18, 22-23. When Harris arrived, he either pushed or kicked the kneeling Serrano in what Defendants say was an effort to cause him to lie on the ground in a prone position. *Id.* ¶ 26. Salazar approached Serrano from his left side, grabbed his left arm and attempted to handcuff him. *Id.* ¶¶ 31-32. Salazar and Harris discharged their TASERs in dart mode a total of seven times. *Id.* ¶ 44. At this point, Plaintiffs allege Defendants used deadly force, as discussed in detail in the following section.

           (2)     Government's Interest

The Parties dispute the degree to which Serrano threatened the safety of the officers or the public and resisted arrest. All of these matters bear on an evaluation of the government's legitimate interest in the use of force. *Espinosa*, 598 F.3d at 537 (citing *Graham*, 490 U.S. at 396).

Plaintiffs argue that Serrano was unarmed, mentally unstable, and posed no threat to Defendants or others. They also contend that Defendants knew or should have known that Serrano was mentally unstable or intoxicated. Opp'n, Dkt. 145 at 13. Officer Salazar testified that he believed Serrano might be mentally ill, Salazar Dep., Dkt. 80-1 at 5-6, and Harris thought Serrano might be on drugs. Dkt. 145-1, ¶ 25. Plaintiffs' expert Roger Clark, a "twenty-seven year veteran of the Los Angeles County Sherriff's Department," has testified that California law enforcement officers are trained at the Peace Officer Standards and Training ("POST") Academy, and has opined that Defendants knew or should have known from their POST training to approach mentally unstable individuals calmly, not to behave aggressively or agitate them, and to avoid using force except as a last resort. Clark Report, Dkt. 146, Exh. B at 13-14, 18. Clark also declared that Defendants behaved dangerously, unreasonably, and recklessly in light of their training. The basis for this opinion is that they confronted Serrano aggressively, and that the "use of the Taser in this incident was grossly excessive and unjustified, because Mr. Serrano did not pose any sort of credible threat that could not be easily mitigated by simple verbal and firm grip methods." *Id.* at 8.[8]

Defendants contend that "the mental state of the suspect is only one factor to be evaluated in reviewing the reasonableness of a particular use of force." Reply, Dkt. 153 at 6 (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2011)). Thus, they argue that Defendants' use of force was reasonable in light of the threatening behavior of Serrano given all of the surrounding circumstances. Salazar claims that he struck Serrano with the flashlight because Serrano moved toward him in what he thought was

---

[8] Defendants object to this testimony by Clark. Dkt. 155. This objection is OVERRULED. Dkt. 161.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | | Date | October 14, 2014 |
|---|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | | |

an attempt to attack, and reached into his waistband for what may have been a weapon. Salazar Dep'n, Dkt. 141, Exh. H at 14-15, 23. In addition, Salazar and Harris maintain that Harris initially deployed the TASER only after Serrano violently grabbed Salazar's arm and pulled him down. *Id.* at 30-31; Harris Dep'n, Dkt. 141, Exh. I at 15-16.

Plaintiffs respond that these are self-serving statements of the officers that should be viewed with skepticism in determining whether there is a genuine issue of fact. They argue that the video footage from the TASER devices does not show Serrano coming to his feet or attempting to strike or assault the officers. Dkt. 145-1, ¶ 3; Opp'n, Dkt. 145 at 17 (citing *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)).

The TASER video does not unambiguously support either Party's description of the operative events. For example, at 05:32:20-05:33:12, a kneeling Serrano is shown fumbling through his clothing, and reaching into the hood of his sweatshirt to produce what appears to be a crucifix. Dkt. 141, Exh. F. The interpretation of this footage raises genuine questions of material fact as to the meaning of Serrano's gestures and the reasonableness of Defendants' interpretation of them.

Finally, the Parties dispute the degree to which Serrano resisted arrest.[9] Based on the TASER video and the depositions of Salazar and Harris. Defendants contend that Serrano rolled to break the TASER circuit, pushed at the wires, and violently resisted the officers' attempts to restrain him. Dkt. 145-1, ¶¶ 35-43. Clark, who as noted is an expert retained by Plaintiffs, opines that rolling on the ground is a response "typical of being tased" and does not suggest deliberate evasion. Clark Report, Dkt. 146, Exh. B at 7. Plaintiffs claim that the evidence supports their claim that Serrano was not resisting the officers but did not understand what they were asking him to do. Opp'n, Dkt. 145 at 7-8; Gabriela Serrano Dep., Dkt. 82, Exh. H at 18. Plaintiffs produce the testimony of several percipient witnesses to support the claim that Serrano was in a fetal position on the ground, saying "stop" and "no more" in Spanish to the officers, but that the officers mocked and yelled profanities at him and continued to tase him. Eduardo Hernandez Dep., Dkt. 83, Exh. I at 5-7; Efrain Hernandez, Jr. Dep., Dkt. 84, Exh. K at 4-9. The TASER video does not unambiguously support either Party's account of these events. Dkt. 141, Exh. F.

(3) Balancing of Interests

A reasonable fact-finder could conclude, taking the evidence in the light most favorable to Plaintiffs, that Defendants' use of non-deadly force was unreasonable and therefore constitutionally excessive. *See Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011) (citing several cases for the proposition that the

---

[9] Defendants observe that, in Plaintiffs' Statement of Genuine Disputes of Material Fact, they state "Undisputed" in response to Defendants' contention that "at about 5:40:48 p.m., after about 5 minutes and 31 seconds of continuous resistance and exertion by Serrano, Serrano abruptly stopped moving and Officer Salazar radioed that Serrano was unconscious." Dkt. 145-1, ¶ 65. However, Plaintiffs' evidence and other pleadings uniformly dispute the contention that Serrano engaged in continuous resistance. Consequently, Paragraph 65 of the Statement of Genuine Disputes of Material Fact, which appears to have been the result of an error, will not be deemed a concession that there is no "genuine dispute necessary to be litigated" as to the resistance of Serrano. *See* Local Rule 56-2.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

use of a TASER in dart mode against a suspect who is neither a flight risk, a dangerous felon, nor an immediate threat could violate the Fourth Amendment). The disparities between the percipient testimony offered by Plaintiffs and Defendants with respect to the use of non-deadly force demonstrate the presence of genuine issues of material fact as to the claim of excessive force.

                      b)       Use of Deadly Force and Cause of Serrano's Death

The Colton Order concluded that genuine issues of material fact existed as to "whether the officers were on top of Serrano while they handcuffed him and then remained in that position for several minutes; and . . . whether the weight of the officers on Serrano's upper body caused his death through restraint asphyxia." Order, Dkt. 99 at 10. Specifically, witnesses Eduardo Hernandez and Efrain Hernandez, Jr. claim to have seen the officers sitting on or pressing their knees on the back of Serrano when he was prone on the ground. *Id.* at 9 (citing Dkt. 83-84, Exhs. I, K). Plaintiffs' expert Dr. Ronald O'Halloran, the former Coroner of Ventura County, opines that Serrano's death was caused by "restraint asphyxia," or "asphyxia by compression of his trunk (chest/abdomen) while being held prone by the weight of three police officers for 2-5 minutes." O'Halloran Report, Dkt. 146, Exh. A at 12. Defendants deny placing themselves in positions on Serrano that resulted in his bearing their combined, full body weight. Instead, they claim to have kneeled near, but not on top of him as they restrained him. Dkt. 145-1, ¶ 63. Defendants also present the expert testimony of Dr. Gregory Holt, the medical examiner who performed the autopsy of Serrano. As noted, Holt opines that Serrano died from "excited delirium," or cardiac arrest caused by the combination of his use of methamphetamine and the physical exertion that he made in resisting arrest. *Id.* ¶¶ 73-74; Dkt. 142 at 41.

Defendants assert that, notwithstanding the conclusions in the Colton Order, there is not a genuine issue of material fact as to either the use of deadly force or the cause of death. Mot., Dkt. 137 at 18-20. Defendants point out "[s]everal of Serrano's family members were eyewitnesses to portions, *but not all*, of the interaction between the defendant officers and Serrano." Mot., Dkt. 137 at 18. Defendants argue that some of the physical contact these witnesses claim to have seen is disproved by the TASER videos, and, in any event, that there are gaps in the recollections of the witnesses such that they do not contradict the officers' account of events. *Id.* at 18-19.[10] Plaintiffs argue that Defendants mischaracterize the testimony of the percipient witnesses whose testimony they have presented. Opp'n, Dkt. 145 at 23-24.

The eyewitnesses on whose testimony Plaintiffs rely for the restraint asphyxia theory are Efrain Hernandez, Jr. and Eduardo Hernandez. The Court summarized this testimony in the Colton Order:

> [Efrain] Hernandez Jr. testifies that, after he heard a "pop" and a neighbor's scream, "we all ran out to see. And then I was able to see two officers were still on top of my brother-in-law, but my brother-in-law couldn't move no more . . . he's dead." Dkt. 84, Exh. K, at

---

[10] Defendants object to Dr. O'Halloran's testimony. They argue that it lacks adequate factual support and is contradicted by other evidence Plaintiffs did not produce to O'Halloran. Mot., Dkt. 145 at 18; Defs.' Evid. Objs., Dkt. 155. Defendants' objections are OVERRULED. Dkt. 161.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

> 95. He was then asked, "[w]hat does that mean, 'on top of him' . . . Did he have anything on Serrano?" Hernandez Jr. answered, "[b]oth of the officers' body was on top of my brother-in-law." *Id*. at 97. Hernandez was then asked, "[s]o at this point in time, when the Hispanic officer was on Serrano's left and the White officer is on Serrano's right, both the White officer and the Hispanic officer are laying on Serrano's back, with the majority of the officers' trunks on Serrano's back? Is that what you observed?" *Id*. at 99. Hernandez Jr. answered, "Yes." He was then asked, "Was the first officer, the Hispanic officer, did he have his right knee on Serrano's back during that period? Hernandez Jr. answered, "Yes." Next he was asked if Serrano was moving at that time, and Hernandez Jr. answered, "I couldn't see if he was moving. They had pressure on top of him so --." *Id*. at 88.
>
> Eduardo Hernandez provided similar testimony. Thus, he testified that one of the officers got "on top of" Serrano." Dkt. 83, Exh. I, at 136. When asked to clarify his testimony, Hernandez stated, "[h]e approaches him and kind of, I guess, mounts him, I guess, you know, on top of him . . . my stepdad was just like on the ground, and then just like he's under him, and then he just kind of puts his legs like, around him." *Id*. He was then asked, "could you tell if at that point in time the officer was sitting on Serrano or was he still just straddling him with his knees?" Hernandez answered, "Oh. He was sitting on him." *Id*. at 137. He was then asked to describe the part of Serrano's body on which the officer was sitting. Hernandez answered, "I want to say, I guess, probably the waist." *Id*. at 138. Hernandez then testified that Serrano tried to get up by pushing his chest up off the ground with his hands, but the officer pushed his chest back into the ground with both hands. *Id*. at 141.

Dkt. 99 at 9.

Defendants raise several issues about the testimony of these witnesses. That Defendants have presented an alternative account of the events of January 15, 2012, does not mean that there is not a triable issue of fact, which was the conclusion of the Colton Order. Plaintiffs and Defendants each questioned Eduardo Hernandez on November 5, 2013 and Efrain Hernandez, Jr. on November 12, 2013 at their respective depositions. Dkts. 83-84, Exhs. I & K; Dkts. 139, 141, Exhs. B & J. Although Defendants point to what they claim are inconsistencies in this testimony, neither witness recants the testimony that Plaintiffs offered in opposition to summary judgment.

Efrain Hernandez, Jr. testified that he saw the knee-to-back contact for about 15 seconds between the first and second discharge of the TASER. Hernandez, Jr. Dep., Dkt. 141, Exh. J at 12-17. This testimony is contradicted by the TASER videos. They show that the TASER deployment took place over the course of less than a minute, and do not reflect knee-to-back contact of at least 15 seconds during this period.[11] At the hearing on the Motion, Plaintiffs made a new argument. They claimed that

---

[11] The TASER videos do not definitively show that no knee-to-back contact took place during the tasing. Hernandez, Jr. says that he heard only five TASER sounds. The video establishes that there were seven TASER discharges. Therefore, it is unclear to which discharges he referred to in his testimony. According to the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

Hernandez, Jr. was mistaken about when he saw the knee-to-back contact, but that he saw it nevertheless. Dkt. 160. Plaintiffs contend that a reasonable jury could infer that Hernandez, Jr. saw the knee-to-back contact after the tasing took place, when Serrano was partially handcuffed and prone on the ground. *Id.* More significant than this apparent dispute is that Hernandez, Jr. also testified about the officers applying force to a prone Serrano. This testimony was sufficient to provide the foundation to Dr. O'Halloran's opinion that Serrano's death was caused by restraint asphyxia. Hernandez, Jr. testified that after the TASER discharges, he saw two officers "on top of" Serrano, but his view was partially blocked, Dkt. 141, Exh. J at 18, and that he saw "both the White officer and the Hispanic officer . . . laying on Serrano's back, with the majority of the officers' trunks on Serrano's back." *Id.* at 19.

Defendants argue that this testimony does not support the restraint asphyxia theory because Hernandez, Jr. saw this contact "after all TASERing was over, and after Serrano was already motionless," and, further, that although Hernandez, Jr. "allegedly saw officers 'on top' of Serrano's back, after Serrano was motionless, he could not see if the officers were actually touching Serrano's back." Mot., Dkt. 137 at 19-20. These arguments are not persuasive in the context of this Motion. First, it is not clear from Hernandez, Jr.'s testimony that Serrano was motionless when Hernandez, Jr. saw the officers on top of him: Hernandez, Jr. testified that he could not see Serrano moving from the waist down, but he was unable to tell if Serrano were moving from the waist up, and the officers "were wrestling with him" despite Serrano's lack of resistance and his being in handcuffs. Dkt. 141, Exh. J at 20. Second, even if Hernandez, Jr.'s testimony is construed to mean that Serrano was already unconscious when the officers were allegedly sitting on him, this is not inconsistent with restraint asphyxia: Dr. O'Halloran reported that "[i]t can take as little as two minutes for an exhausted person who cannot breathe to loose [sic] consciousness. Not long after respiratory arrest the heart will stop functioning because, like the brain, it also needs oxygen to function." O'Halloran Report, Dkt. 146, Exh. A at 12. Continued compression to the body of an already unconscious but still living Serrano could cause him to asphyxiate and die, consistent with Dr. O'Halloran's conclusions. Third, that Hernandez, Jr. did not see direct contact between the officers' bodies and Serrano's body may affect the weight of his testimony, but does not make it inadmissible. It is, therefore, sufficient to create triable issues as to whether Defendants applied sustained pressure to Serrano's body and whether that pressure caused Serrano's death.

Eduardo Hernandez's testimony supports Hernandez, Jr.'s account. It also supports the conclusion that there are triable issues. Eduardo Hernandez testified that he only heard two TASER deployments, and that after the second one he saw an officer "sitting on Serrano," with his "butt" in contact with Serrano's "legs or his waist." Dkt. 139, Exh. B at 23. Hernandez testified that Serrano tried to get up, but the officer repeatedly pushed Serrano down with both hands, and Serrano never got up more than an inch

---

timestamps on the videos, the accuracy of which Plaintiffs do not dispute, all seven discharges took place between 5:35:17 p.m. and 5:36:02 p.m. Dkt. 141, Exh. F; 145-1, ¶¶ 33, 44. The video becomes blurry and difficult to interpret at the 5:35:27 mark, and there is a five-second lapse during which there is no recording from 5:35:29 to 5:35:34. At 5:35:34, Serrano can again be seen kneeling, and the legs of an officer can be seen right behind him, but do not appear to be placed on his back. Dkt. 141, Exh. F. Hernandez, Jr.'s testimony is not inconsistent with the claim that one of the officers had placed his knee on Serrano's back during the tasing at some point during this seven-second interim, if not for the entire 15 seconds.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

before the officer pushed him back down. *Id.* at 23-24.

Defendants contend that this testimony is insufficient to support the restraint asphyxia theory because Hernandez did not see sustained pressure, the officer "was seated with the officer's buttocks on Serrano's thighs," and Serrano was able to rise slightly during the incident. Opp'n, Dkt. 137 at 19. However, these interpretations of the evidence overlook aspects of Hernandez's testimony, and do not rebut its support for the restraint asphyxia theory. First, Hernandez claimed that he *did* see sustained pressure: even though the "push-up" motions followed by the officer's two-handed pushes down were not continuous, Hernandez claimed the officer was sitting on Serrano the entire time he observed this portion of the event. Dkt. 139, Exh. B at 23. Second, Defendants' claim that Hernandez saw the officer on Serrano's "thighs" as opposed to his waist or trunk is based on a small excerpt of his testimony, in which Defendant's counsel asked, "you saw the officer place the officer's butt on Serrano's thighs; correct?" and Hernandez responded, "Yes." *Id.* However, in response to the prior two questions, Hernandez had said that he saw the officer's butt on Serrano's "waist" or his "side," consistent with the restraint asphyxia theory. *Id.* Finally, Serrano's ability to push himself up an inch or so during the confrontation does not rebut the restraint asphyxia theory. Restraint asphyxia occurs when the "relatively weak muscles of breathing (primarily the diaphragm and intercostal muscles)" become exhausted from compression and can no longer lift the chest enough to allow air to enter the lungs. O'Halloran Report, Dkt. 146, Exh. A at 12. It is not clear that Serrano, who was overweight and had a "fat belly," *id.*, would be able to relieve the pressure on his diaphragm and intercostal muscles by pushing his body up an inch at a time and having his body immediately pushed back down.

Viewing the evidence in the light most favorable to Plaintiffs, triable issues of fact remain both as to whether Defendants placed their body weight on Serrano and whether this caused Serrano's death. As noted above, triable issues of material fact also remain as to whether Serrano resisted Defendants or posed a threat to them or to others. This also raises genuine factual issues as to whether the alleged use of deadly force was reasonable. Therefore, summary judgment is DENIED as to Plaintiffs' unlawful seizure and excessive force claims that arise from the claimed use of deadly force.

      c)  Qualified Immunity

Defendants contend that, even if they used non-deadly or deadly excessive force in detaining Serrano, they have qualified immunity. Mot., Dkt. 137 at 26-30. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). Where a constitutional right is concerned, law may be "clearly established" by "decisional authority of the Supreme Court or [the Ninth] Circuit." *Tarabochia v. Adkins*, 2014 WL 4413235 (9th Cir. Sept. 9, 2014). If the law is clearly established but "an officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

(1) Non-Deadly Force

The Ninth Circuit has held that the use of a TASER in dart mode "constitute[s] an intermediate, significant level of force that must be justified by the governmental interest involved," which is based on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). In *Bryan*, the Court held that an officer's use of a TASER in dart mode on an unarmed suspect who appeared mentally disturbed was constitutionally excessive. *Id.* at 827. *Bryan* also held that the officer was entitled to qualified immunity because Ninth Circuit law regarding TASERs was unclear in July 2005, when the incident occurred. *Id.* at 833. As of January of 2012, however, *Bryan* and another Ninth Circuit decision, *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011), had established that the use of a TASER against an unarmed suspect is constitutionally excessive if the suspect did not commit a severe crime, did not pose an immediate threat to the safety of the officers or others and did not resist or attempt to evade arrest. Therefore, Defendants only have qualified immunity if their mistake of fact or law was reasonable. "Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). Because Defendants' claim of qualified immunity depends upon such factual determinations, summary judgment is DENIED on this basis.

(2) Deadly Force

The Ninth Circuit has held that the use of an officer's body weight to compress the body of a suspect is a "severe" use of force, and is only constitutionally permissible "when a strong government interest *compels* the employment of such force." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003) (citation omitted) (emphasis in original). *Drummond* held that such use of force was clearly established to be constitutionally excessive as against a prone, handcuffed suspect who was not resistant and not dangerous: "The officers—indeed, any reasonable person—should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable." *Id.* at 1059. Defendants contend that *Drummond* did not provide clearly established law as to their actions because it "limit[ed] the rule it stated to when the suspect was *not* resisting and was pleading for air." Reply, Dkt. 153 at 10. However, there are genuine issues of material fact as to whether Serrano was resisting arrest. There are also genuine issues as to whether Serrano beseeched the officers to stop. *See* Dep. of Efrain Hernandez, Jr., Dkt. 141, Exh. J at 15. Because Defendants' qualified immunity depends upon these factual determinations, summary judgment is DENIED as to this defense. *Wilkins*, 350 F.3d at 956.

2. <u>Second Cause of Action: Deprivation of Substantive Due Process in Violation of § 1983 and the 14th Amendment</u>

The second cause of action in the FAC is brought by Gabriela Serrano, B.S., G.L.S., and G.S. for deprivation of their substantive due process right to familial association with Serrano. FAC, Dkt. 48, Exh. A, ¶¶ 22. "The Supreme Court has made it clear . . . that only official conduct that 'shocks the conscience' is cognizable as a due process violation," which requires a "demanding showing that he

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

acted with a purpose to harm [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Where a law enforcement officer is "in a rapidly evolving situation requiring him to make 'split-second judgments,'" his decisions need not be as closely scrutinized by the district court. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

Plaintiffs claim that a reasonable jury could find that Defendants' alleged conduct in causing Serrano's death shocks the conscience. Opp'n, Dkt. 145 at 24. However, they offer no evidence that Defendants acted with a purpose to harm Serrano for reasons unrelated to legitimate law enforcement objectives. Therefore, summary judgment is GRANTED as to this claim.

 3. Fourth Cause of Action: Bane Act, Cal. Civ. Code § 52.1(b)

Plaintiffs' fourth cause of action arises under the Bane Act, Cal. Civ. Code § 52.1(b). That statute provides a cause of action where the "exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with," by "threats, intimidation, or coercion." *Id.* Plaintiffs argue, citing *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014), that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Id.* at 1105. Defendants argue that Plaintiffs lack standing to assert the Bane Act claim on Serrano's behalf notwithstanding Gabriela Serrano's appointment as personal representative of the Estate. They also claim that even if there is standing Plaintiffs have not presented sufficient facts to support the claim. Mot., Dkt. 137 at 31-32.

The Colton Order determined that Gabriela Serrano would have standing to assert this claim on behalf of the Estate if she were named successor-in-interest to Serrano. There is no basis to reconsider that conclusion. Order, Dkt. 99 at 12 (citing *Grant v. McAuliffe*, 41 Cal. 2d 859, 864 (1953)); *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013)). However, the Colton Order also suggested that, even if Gabriela Serrano had standing to assert these claims, "Plaintiffs did not present evidence that would support a claim that Gabriela Serrano's rights were violated through 'threats, intimidation or coercion.' Accordingly, there is not a genuine issue of material fact as to her claim under Section 52.1." Dkt. 99 at 11.

Plaintiffs read *Chaudhry* to hold that if there is sufficient evidence to support a § 1983 excessive force claim, there is a per se basis for a Bane Act claim. There is language in the opinion which, if taken out of context, could support that conclusion. *E.g.*, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Chaudhry*, 751 F.3d at 1096 (quoting *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)). However, taking the discussion in the opinion in context, it is apparent that *Chaudhry* was addressing only to the district court's mistaken assumption that the Bane Act requires evidence of discriminatory intent, which is not required. *Id.*; *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 842-43 (2004). *Venegas* did not read the "threats, intimidation, or coercion" element out of the statute. *See id.* at 843 ("All we decide here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

so long as those acts were accompanied by the requisite threats, intimidation, or coercion."). Although excessive force is inherently coercive, California appellate courts have maintained that there must be "'coercion independent from the coercion inherent in the wrongful detention itself' that is 'deliberate or spiteful.'" *Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 981 (2013) (citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012)). These interpretations of the Bane Act are persuasive.

Plaintiffs have presented no evidence to support the inference that Defendants' behavior was deliberately or spitefully coercive. Therefore, summary judgment is GRANTED as to the Bane Act claim.

    4.    <u>Sixth Cause of Action: Wrongful Death, Cal. Code Civ. P. § 377.60</u>

The sixth cause of action in the FAC is for wrongful death under Cal. Code Civ. P. § 377.60. Defendants argue that this "merely raises the claims [of excessive use of deadly force] under state rather than federal law. . . . [and] fails for the same reason[]." Mot., Dkt. 137 at 33. However, as discussed above, there is sufficient evidence to create genuine factual disputes as to whether the detention and use of force were reasonable and whether the force used by the officers caused Serrano's death. Therefore, summary judgment is DENIED as to this cause of action.

    5.    <u>Seventh Cause of Action: Negligence</u>

Plaintiffs allege that Salazar, Harris, Bornsheur, and DOES 4-5 were negligent in that their "actions or failure to act, and each of them, fell below the standard of duty of persons in their profession, and were therefore negligent in the performance of their police tactics and duties." FAC, Dkt. 48, Exh. A, ¶ 44.[12] They also allege that DOES 6 through 10 were negligent in failing to "assure the competence of and properly train, assign, and supervise" Salazar, Harris, Bornsheur, and DOES 4-5. *Id.* ¶ 45.

The California Supreme Court has held that "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 (2013); *see also Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1236 (9th Cir. 2013) (applying this standard after receiving the California Supreme Court's response to certified question). Because there are triable factual issues as to whether Defendants used deadly force and whether the force used was unreasonable, summary judgment is DENIED as to the negligence claim against Salazar, Harris, Bornsheur, and DOES 4-5.

---

[12] Unlike the other causes of action considered on this Motion, DOES 6-10 are named as defendants in addition to Salazar, Harris, Bornsheur, and DOES 4-5. FAC, Dkt. 48, Exh. A, ¶ 43.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

Plaintiffs produce no evidence of the negligence of DOES 6-10. Unlike the City, these supervisory employees are not vicariously liable for the acts or omissions of their subordinates, subject to limited exceptions. Cal. Gov't Code § 820.8. Plaintiffs do not produce evidence that DOES 6-10 directly participated in or ratified the allegedly wrongful acts of the other Defendants. *See Camarillo v. City of Maywood*, 2008 WL 4056994, at *7 (C.D. Cal. Aug. 27, 2008). Therefore summary judgment is GRANTED as to the negligence claim against these defendants.

      6.      <u>Eighth Cause of Action: Battery</u>

A "common law battery cause of action, like [a] section 1983 claim, requires proof that [officers] used unreasonable force." *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008) (citing *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273-74 (1998)). Because there are material questions of fact as to whether Defendants used unreasonable force, summary judgment is DENIED as to the battery claim.

      7.      <u>Punitive Damages</u>

Plaintiffs seek punitive damages from Salazar, Harris, Bornsheur, and DOES 4-5. FAC, Dkt. 48, Exh. A, ¶ 19, p. 16. Defendants argue that there is no evidence that they acted with the requisite mental state to support the demand for such damages. Mot., Dkt. 137 at 33-34. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The California standard is similar: punitive damages are available under California law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Malice is defined to mean "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1).

Plaintiffs have offered sufficient evidence to create genuine issues of material fact as to whether Defendants acted with the requisite mental state to support an award of punitive damages.[13] Thus, if, as Plaintiffs allege, Defendants tased Serrano when he did not pose any apparent threat to them, and then continued to use their body weight despite his lack of resistance and thereby caused his death, a reasonable jury could find that Defendants behaved recklessly or with a conscious disregard of Serrano's rights and safety. Therefore, summary judgment is DENIED as to the demand for punitive damages.

---

[13] The requisite mental state for punitive damages is less demanding than that for a substantive due process claim. *See, e.g.*, *Smith v. Wade*, 461 U.S. 30, 48-40 (1983) (rejecting argument that "evil motive" is required to sustain punitive damages under § 1983); *Wright v. Jones*, 907 F.2d 848, 852 (8th Cir. 1990) (rejecting argument that "willful or malicious conduct" is required under § 1983).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV13-00519 JAK (JEMx) | Date | October 14, 2014 |
|---|---|---|---|
| Title | Estate of Hutalio Serrano-Granados, et al. v. City of Colton, et al. | | |

**V.      Conclusion**

For the foregoing reasons, the Motion is GRANTED IN PART. The Motion is GRANTED as to the substantive due process and Bane Act causes of action against all Defendants, and as to the negligence cause of action against DOES 6-10. The Motion is DENIED as to all other causes of action and as to punitive damages.

All pretrial documents, including any amendments to Dkt. 128 or 129, shall be filed on or before October 20, 2014.

**IT IS SO ORDERED.**

                                                                                              :

                                                              Initials of Preparer    ak